Charles CATALANO, Petitioner,

v.

UNITED STATES of America,
Respondent.

Crim. No. 44008.

United States District Court
E. D. New York.

Oct. 15, 1959.

Cornelius W. Wickersham, Jr., U. S. Atty., by Dominick L. DiCarlo, Asst. U. S. Atty., Brooklyn, N. Y., for the United States.

Charles Catalano pro se.

BRUCHHAUSEN, Chief Judge.

The defendant, now in custody, moves this Court under 28 U.S.C.A. § 2255 for an order, vacating the judgment of conviction herein.

On August 11, 1955, the defendant was convicted by a jury of the crime of armed bank robbery, after a trial lasting several weeks. Shortly thereafter he was sentenced to imprisonment for a term of twenty-five years.

The defendant contends that he was not given a fair trial and requests a hearing.

The basis of this application, as set forth in his affidavit, is an alleged conversation he had in June 1956 with an unidentified Deputy United States Marshal during his transfer from Federal Detention Headquarters to the Queens County Court House. The defendant avers that the said Deputy Marshal informed him that, while the jury was engaged in deliberation, Mr. Howard B. Gliedman, an Assistant United States Attorney, met the said Deputy Marshal in the corridor and that the following incidents ensued, viz.:

That Mr. Gliedman explained that the jury had called for a coat, an exhibit;

that Mr. Gliedman requested the said Deputy Marshal to try on the coat; that he did so and that both of them entered the jury room; that Mr. Gliedman convinced the bailiff that they were on a legitimate errand; that Mr. Gliedman informed the jurors that the Deputy Marshal was wearing the coat; that Mr. Gliedman remarked that the Deputy Marshal and the defendant were the same size and then held a polka dot kerchief in front of the face of the Deputy Marshal and that the jurors seemed to be extremely interested in the fit of the coat.

■■ There are several legal objections to the grant of the relief sought by the defendant. In the first place his testimony would be barred under the hearsay rule. He is precluded from testifying to what someone told him. Secondly, a review may not be had on a party's unsupported allegations. In this connection, in United States v. Mathison, D.C., 159 F.Supp. 811, 813, affirmed in 7 Cir., 256 F.2d 803, certiorari denied by the United States Supreme Court in 358 U.S. 857, 79 S.Ct. 77, 3 L.Ed.2d 91, the Court said:

> "Since the creation of Title 28 U.S.C. § 2255, certain rules of interpretation have become clear. * * * A petitioner's allegations supported only by his own assertions are insufficient."

Although the Court is constrained to deny the motion for the reasons mentioned, it elects to make further comment.

■ No explanation is offered by the defendant for his failure to bring the alleged incident to attention until the elapse of more than three years subsequent to its claimed occurrence.

The respondent has submitted the answering affidavits of Dominick L. DiCarlo, an Assistant United States Attorney, and Howard B. Gliedman, a former Assistant United States Attorney, together with a certified transcript of the proceedings for the period from August 11, 1955 at 10:50 A.M., when the jury commenced its deliberations, to twelve o'clock noon, at which time the jurors reported their verdict in open court. It discloses that at 11:30 A.M. the trial Judge informed the parties and their attorneys that he had received a message from the jury requesting certain exhibits, i. e., the photographs of the bank and of the defendants; that those exhibits, consisting only of photographs, were assembled by the said attorneys and handed to the bailiff for delivery to the jurors. No photograph of the defendant Catalano was placed in evidence, hence none was delivered. The said record shows further that this was the only request made by the jurors for exhibits and the aforementioned exhibits were the only ones sent to the jury room.

Mr. Gliedman's affidavit sets forth that the incident referred to by the defendant never occurred.

Mr. DiCarlo's affidavit avers that he inquired of the Deputy Marshals and that none of them knew of any such occurrence.

I was the trial Judge and kept a record of the witnesses and the exhibits. Daniel Ganz, one of the twenty-three witnesses called by the Government, testified that an automobile driven at high speed passed him and crashed into a tree; that the defendant, wearing a top coat, ran to a nearby fence and climbed it.

There was evidence that the police surrounded the neighborhood.

Margaret Macsey, another Government witness, residing in the vicinity, testified that while descending to a basement room she saw two legs protruding from under a table; that she went upstairs and beckoned to a policeman and pointed to the basement. The policeman, Charles Gust, testified that he found the defendant under the table in the cellar and that the latter exclaimed "don't shoot, I give up." William J. Schusel, the bank manager, also identified the defendant.

The top coat and a blue bandanna were marked exhibits 15 and 16.

Another policeman, Joseph Monaco, testified that he found the topcoat in the basement room. Mrs. Macsey stated that it did not belong to anyone in her family. Detective Monaco also averred that he caused the defendant to try on the topcoat in the station house. My record further shows that the coat was tried on in the courtroom during the trial.

The motion is denied.